**Pamela BOSTWICK, Complainant,**

v.

**Morris COHEN, dba Shangrila Pools, and Avco Financial Services, Inc., and Avco Financial Services, Inc. No. 50, and Avco Financial Services, Inc. No. 51, and Avco Financial Services, Inc. No. 52, Defendants.**

No. C 70–201.

United States District Court,
N. D. Ohio,
W. D.

Nov. 24, 1970.

---

Gerald Lubitsky, Toledo, Ohio, for complainant.

B. Gary McBride, Toledo, Ohio, for Avco Financial Services, Inc.

## MEMORANDUM

WALINSKI, District Judge.

This is a civil action pursuant to 15 U.S.C.A., Section 1640(a) of the Consumer Credit Protection Act, popularly referred to as the Truth in Lending Act, wherein plaintiff alleges that she entered into an agreement with defendant, Cohen, DBA Shangrilla Pools, for the purchase and installation of a swimming pool in the backyard of her home. The terms of the agreement are pleaded in paragraph number three of the complaint and since the finance charge would exceed the statutory maximum of $1000.00, plaintiff prays that she may recover $1000.00, plus costs and a reasonable attorney fee. Plaintiff further alleges that she executed a note and a mortgage both of which were later assigned to the defendant, Avco Financial Services, Inc.

In its separate amended answer defendant, Avco, admits that the above described agreement was made between plaintiff and defendant, Cohen, and that it was later assigned to Avco. Further answering, Avco denied that the disclosure provisions of the Consumer Credit Protection Act were violated as plaintiff alleged. As a separate defense, Avco asserted that plaintiff had exercised her right to rescind the transaction pursuant to 15 U.S.C.A., Section 1635, and that she had, therefore, waived any rights she may have had under the civil liability section.

Plaintiff then filed a motion pursuant to Civil Rule 12(f) of the Federal Rules of Civil Procedure to strike the separate defense for the stated reason that it is an insufficient defense as a matter of law. This cause is now before the court

on plaintiff's motion to strike and the issue presented is whether an election to rescind a transaction pursuant to 15 U. S.C.A., Section 1635, precludes plaintiff from pursuing relief under Section 1640, the civil liability section.

Plaintiff's position seems to be that the two sections are not mutually exclusive for the reason that Congress has not stated that the consumer must elect one remedy and forego the other; rather, plaintiff states that Congress has enacted two different laws: One for damages for failure to disclose certain credit terms; the other, for rescission where a lien is obtained or retained upon the home of the debtor.

Defendant's position is that rescission has historically been an elective remedy to the exclusion of other remedies founded upon the affirmance of the transaction and that the courts should not depart from this concept without having a clear legislative expression to do so.

Having carefully considered the issue presented, this court is of the opinion that the plaintiff's motion to strike is not well taken and should be denied. The path leading to this conclusion was not, of course, completely free from obstruction. Moreover, since the Consumer Credit Protection Act is a relatively new enactment, the court did not have the benefit of well established judicial guideposts to assist it in resolving this issue.

In reaching its decision, the court started with the generally accepted proposition of law advanced by the defendant, *viz.*, that a remedy of rescission is inconsistent with a remedy based on a theory of the affirmance of the transaction and that an election of the former constitutes an abandonment of the latter, see generally 28 C.J.S. Election of Remedies § 6; 18 O.Jur.2d, Sections 30–31. As the defendant noted, this traditional concept of electing remedies should not be deviated from unless there has been a clear expression by Congress that it intended to change the law in this respect.

In reviewing both the Act and its legislative history, the court did not discover any clear legislative expression to deviate from the aforementioned concept of electing remedies. This court, therefore, is of the opinion that it should construe the statute in the manner most favorable to the defendant, the person upon whom the new burden would devolve if the traditional concept of electing remedies were to be altered.

It is possible, of course, to view the civil liability section of the Act as being punitive in nature rather than remedial. Such a view would lead to the conclusion that the election of remedies concept has no application to this case. There are, however, certain aspects of the Act which have caused this court to reject any arguments to the effect that the civil liability section is punitive in nature.

At the outset, the court calls attention to the stated purpose of the Act, which is as follows:

It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. 15 U.S.C.A., Section 1601.

The Act's history also makes it clear that the intended purpose was to protect consumers by providing them with accurate information so they could shop for credit, see 1968 U.S. Code Cong. and Adm. News, at pp. 1965, 1975, 1990. To achieve its goal, the Act requires certain disclosures by creditors, it regulates advertising, it renders certain transactions rescindable, and it makes provision for both civil and criminal liability.

It is certainly true that consumer protection can only be effected by compelling creditors to conform to the disclosure requirements and the Act's history indicates that the force primarily designed to compel creditor compliance is administrative enforcement of the disclosure requirements, 1968 U.S. Code Cong. and Adm. News, at pp. 1975–76. Also, the United States Attorney Gener-

al is authorized to initiate criminal proceedings in some situations, 15 U.S.C.A., Section 1611.

■ Pragmatically, the civil liability section also forces the creditor to comply with the disclosure requirements but it should be remembered that the civil liability section was designed for use by the "aggrieved debtor," 1968 U.S. Code Cong. and Adm. News, at p. 1976.[1] Since a consumer who has rescinded his transaction is "not liable for any finance or other charge", 15 U.S.C.A., Section 1637, this court fails to see how he can be described as an "aggrieved debtor."[2] Otherwise stated, it appears to the court that rescinding consumers are not within the class of persons which the civil liability section seeks to protect.

The court remains steadfast in its position that the civil liability section is remedial rather than punitive in nature even though the section provides that damages shall be two times the finance charge. The court views this double damage provision only as an incentive for aggrieved debtors to initiate civil actions to protect their rights. It was noted in the legislative history of the Act that some consumers would lack the means to institute their own civil actions, 1968 U.S. Code Cong. and Adm. News, at p. 1975. Moreover, it would seem that in many transactions the actual damage sustained by the consumer would be so small that he would not think it worth his time and effort to institute a civil action. Statutes which provide for minimum damages as an incentive to the injured person to invoke the remedy are not, of course, strangers to the law, see 25 C.J.S. Damages § 3, at 628.

In summary, the court finds that the civil liability section of the Act is remedial; that a rescinding consumer is not within the class of persons which the section seeks to protect; and that there is nothing in the Act or its history indicating that Congress intended to depart from the well established rules concerning electing remedies. Plaintiff's motion to strike is, therefore, denied.

---

[1.] Parenthetically, the court calls attention to 15 U.S.C.A., Section 1631(a), which reads as follows:

"Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed, the information required under this part."

This section, of course, is not directly applicable to the case at bar and the court looks to it only for the purpose of supporting its conclusion that the Act seeks only to protect those consumers who have to pay finance charges. This section points out that disclosure is only required when finance charges may be imposed. Thus, the fact that the rescinding consumer does not have to pay a finance charge militates against affording him protection under the civil liability section.

[2.] On the other hand, a non-rescinding consumer or one that does not have rescission available to him is obligated to fully perform the agreement notwithstanding the fact that the creditor may have breached his statutory duty to disclose the required information. Thus, the non-rescinding consumer suffers since he must still pay the finance charge as well as the total indebtedness, see 1 CCH 1970, Consumer Credit Guide, Paragraph 2016 at 3156.